A91A0908. WHITE v. THE STATE.
(410 SE2d 441)

McMURRAY, Presiding Judge.

Defendant was indicted for rape. The victim testified at a jury trial that defendant forced her into a vacant apartment and raped her. The victim also testified that she contracted venereal disease about two weeks after the alleged rape and that her condition was "from [defendant] not being clean. . . ." The victim explained that she was examined by a hospital physician after the rape and that she was not then diagnosed with vaginal infections.

Defendant testified that the victim agreed to have sex with him in exchange for money to purchase illegal drugs, but that he decided not to have intercourse with the victim because the victim told him she was a prostitute and because the victim's nude body was "very filthy," i.e., the victim had "all kind of cream and, you know, discharge . . ."

The jury found defendant guilty. This appeal followed the denial of defendant's motion for new trial. *Held:*

1. Defendant contends the trial court erred in excluding medical testimony regarding an infectious discharge discovered in the victim's body within hours after the alleged rape.

The defense subpoenaed Dr. Margaret Kay Cramer, the physician who examined the victim after the alleged rape. The following transpired before Dr. Cramer's testimony: "[STATE'S ATTORNEY]: Your Honor, before [defense counsel] calls her next witness, I'd like

to make an oral motion in limine, that your honor instruct [defense counsel] to limit her direct examination of the doctor, to limit it only to what she found in regards to lacerations, contusions, physical examination in regards to the incident in question and that she not go into whether or not the victim had any gonorrhea, any sexually communicated diseases or any other diseases. That would be improper under the Georgia Rape Shield Statute.

"THE COURT: That's correct. I'm not going to let that in."

Defense counsel unsuccessfully pressed an objection to the trial court's ruling, but perfected the record as follows: "Q. Ms. Cramer, did you have the occasion to examine [the victim] on 12/28? A. Yes, I did. Q. Did you find that she had any type of female problems or infections? A. Yes, there was evidence that she had several common vaginal infections, including trichomonas, gardnerella and yeast. Q. Does your report also indicate that she had vaginitis? A. Those infections are vaginitis. Q. Also Ms. Cramer — Dr. Cramer, did you not find that she had a thick, white discharge? A. Yes, she did. Q. It was visible? Yes. Q. And there was no sperm seen? A. I saw no sperm on my examination.

"[DEFENSE COUNSEL]: Your honor, that is the testimony I would like to offer to impeach the [victim] as to the fact that there was no vaginal discharge, and also that she did not have these vaginal infections when she came in to see the doctor, she contracted them that day and they became evident a few weeks later. That was the [victim's] testimony on direct examination, that she had no female problems prior to this incident and that there was no discharge." The trial court then considered argument from the State's attorney and held: "I will not admit this testimony and you will not argue that point to the jury."

Defendant argues that Dr. Cramer's excluded testimony was not evidence of the victim's past sexual behavior in violation of Georgia's Rape Shield Statute, OCGA § 24-2-3, but was relevant to impeach the victim's testimony that defendant was not sexually "clean" and that defendant infected the victim during the alleged rape. Defendant further argues that this evidence was relevant to corroborate his testimony that he did not have intercourse with the victim because of the presence of an infectious discharge from the victim's body.

Dr. Cramer's testimony regarding the victim's physical condition after the alleged rape was not evidence of the victim's past sexual behavior in violation of Georgia's Rape Shield Statute. See OCGA § 24-2-3 (a). On the contrary, the excluded testimony was relevant to defendant's claim that he did not penetrate the victim because of the victim's gross physical condition. The testimony was also admissible to impeach the victim's claim that she was not diagnosed with vaginal infections after the alleged rape and it was admissible to challenge the

victim's claim that defendant was the cause of her vaginal infections. Consequently, the trial court erred in limiting Dr. Cramer's testimony with regard to the victim's physical condition after the alleged rape. Further, we cannot say the exclusion of this testimony was harmless error since it was crucial to defendant's claim that he did not penetrate the victim. Accordingly, the case must be reversed. See *Villafranco v. State*, 252 Ga. 188, 193 (1) (313 SE2d 469).

2. Defendant contends the trial court erred in limiting his attorney's cross-examination of the victim with regard to a pending charge of prostitution against the victim.

"It is true that an attempt to impeach a witness on the ground that he is a criminal must be supported by a conviction; that he merely has been charged with a crime is no proof that he is a criminal. But that is not to say that *pending* criminal charges are not relevant. On the contrary, the partiality of a witness may be exposed by proof that he hopes to benefit in related cases from his cooperation with the prosecution in this case. Such partiality 'is subject to exploration at trial, and is "always relevant as discrediting the witness and affecting the weight of his testimony." (Cit.)' *Hines v. State*, 249 Ga. 257, 260 (290 SE2d 911) (1982) (quoting *Davis v. Alaska*, 415 U. S. 308, 316 (94 SC 1105, 39 LE2d 347) (1974))." *Kinsman v. State*, 259 Ga. 89, 91 (7,b) (376 SE2d 845). However, " '(t)rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on cross-examination (about possible witness bias) based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.' *Delaware v. Van Arsdall*, 475 U. S. 673, 679 (106 SC 1431, 89 LE2d 674) (1986). See *Lee v. State*, 258 Ga. 762 (6) (374 SE2d 199) (1988)." *Kinsman v. State*, 259 Ga. 89, 91 (n. 2), supra.

In the case sub judice, defendant argues that the trial court abused its discretion in limiting cross-examination with regard to a charge of prostitution against the victim, pointing out that such evidence is relevant to his claim that the victim voluntarily agreed to exchange sex for drug money. Defendant reasons that evidence of the victim's propensity to exchange sex for money becomes even more relevant in light of evidence showing that no apparent signs of struggle were observed by the police officer who walked in on defendant and the victim, finding them together in a vacant apartment totally nude. Defendant further reasons that the victim's claim of rape dispels any suspicion that she was repeating the crime of prostitution and dispels any suspicion that she was involved in apparent illegal drug activity inside the vacant apartment.

We agree that any pending criminal charge of prostitution against the victim would be highly relevant to defendant's case. How-

ever, we find no abuse of the trial court's discretion under the circumstances revealed in the record sub judice. First, the record reveals no proof that the victim has been arrested or charged with prostitution. Second, the trial judge questioned the victim regarding defense counsel's allegation that the victim had been arrested and charged with prostitution and the victim responded: "I was in the wrong place at the wrong time, around the wrong people. They locked me up and that was over on Peachtree. I was with some girls that lived there. I wasn't prostituting. If I were, I would have had some money. He throwed it out of court."

*Judgment reversed. Sognier, C. J., and Andrews, J., concur.*

DECIDED SEPTEMBER 3, 1991.

*N. Yolanda Buford-Epps*, for appellant.

*Lewis R. Slaton*, District Attorney, *Joseph J. Drolet, Alfred D. Dixon, Carl P. Greenberg*, Assistant District Attorneys, for appellee.